UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES FLEMING                             CIVIL ACTION

VERSUS                                      NO. 04-2740

TRANSOCEAN OFFSHORE USA INC.                SECTION "R" (4)


**ORDER AND REASONS**

Defendant Transocean Offshore USA moves the court for partial summary judgment. Plaintiff Charles Fleming opposes the motion. For the following reasons, the court GRANTS Transocean's motion for partial summary judgment.


**I. BACKGROUND**

Transocean employed Charles Fleming aboard its vessel the Transocean Rather. On June 17, 2000, Charles Fleming injured his left knee when it was pinned between an air hoist muffler and an elevator aboard the Rather ("the 2000 injury"). Kevin E. Warren, the rig medic, examined Fleming's knee and reported that Fleming's left leg was pinched at the patella and showed anterior and posterior redness. Warren completed an internal report

documenting the examination.  Despite pain in his knee, Fleming did not miss any work because of the injury.

Fleming visited Dr. Jack McHenry of Quitman, Mississippi approximately five times from April 2001 until July 2001.  The records of each of these visits addressed orthopedic and dermatological issues unrelated to left knee pain.  On April 11, 2002, Fleming visited Dr. David Pomierski of Meridian, Mississippi to address left knee pain.  Dr. Pomierski performed an MRI and diagnosed a horizontal tear of the posterior horn of the medial meniscus.  Fleming asserts that he was not aware of the nature and extent of this injury or the damages he had suffered until approximately April 2002.  On May 7, 2002, Dr. Pomierski performed arthroscopic surgery on Fleming's left knee.  Fleming returned to work for Transocean on or around June 12, 2002, after fully recovering from surgery.  On June 17, 2002, he injured his left knee while aboard the Transocean Rather ("the 2002 injury").

On October 5, 2004, Fleming sued Transocean, alleging negligence under the Jones Act, 46 U.S.C. § 688, a general maritime claim of unseaworthiness and a claim for maintenance and cure.  Fleming seeks past and future lost wages, past and future medical expenses, and damages for pain and suffering and physical disability, as well as maintenance and cure benefits from the

date that he was rendered unfit for duty until maximum cure is achieved.

Fleming's complaint focuses on the 2002 injury. He alleges that he was fully recovered from earlier knee injuries at the time of the 2002 injury. Alternatively, he asserts that to the extent that he was not fully recovered, he claims damages from those earlier injuries.

Transocean filed this motion for partial summary judgment, asking the Court to rule that Fleming is time-barred from recovering any damages for the 2000 injury.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial.  *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

### B. Statute of Limitations

Cases brought under the Jones Act are subject to a three year statute of limitations in accordance with the Federal Employers' Liability Act ("FELA"). 45 U.S.C. §§ 52-60 (1982). FELA provides, "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56.  Plaintiff argues that his cause of action for the 2000 injury did not accrue until April 2002,

4

when he began treatment for knee problems with Dr. Pomierski. Defendant argues that plaintiff's cause of action accrued on the day of the 2000 injury and was thus time-barred when plaintiff filed this action in October of 2004.

Generally, a cause of action accrues "when there has been an invasion of the plaintiff's legally protected interest." *Albertson v. T.J. Stevenson & Company, Inc.*, 749 F.2d 223, 228 (1984). Typically, a plaintiff's legally protected interest is invaded at the time of the tortious event, as long as "some injury is discernible." *Id*. In *Albertson,* the Fifth Circuit identified two classes of cases in which a person may not know the true extent of the harm caused at the time of causation: "pure latent injury" cases and "traumatic event/latent manifestation" cases. *Id.* at 230-31.

In the pure latent injury paradigm, "the plaintiff fails to discover either the injury or its cause until long after the negligent act occurred." *Id.* at 230. When plaintiff's harm is a pure latent injury, the Fifth Circuit applies the "discovery rule" to the accrual of the claim. Under the discovery rule, the claim accrues on the date the plaintiff discovers, or reasonably should have discovered, both the injury and its cause. *Id.* at 229-30.

In traumatic event/latent manifestation cases, the plaintiff

sustains "both immediate and latent injuries caused by a notable, traumatic occurrence . . . . The full extent of the harm, however, has not become manifest." *Id.* at 231. When the full manifestation of the injury is latent, but the traumatic event causing some injury is known to the plaintiff, the "time of event rule" applies, and the clock begins to run when the traumatic event occurs. *Id.* at 232 n.8.

For example, in *Albertson*, the Fifth Circuit held that the time of event rule applied when the plaintiff became physically ill as he worked with a chemical (TCE) onboard his vessel. Because he became ill upon exposure to TCE, he knew he had been injured. *Id.* at 231. Because he told his superiors he would not work with TCE again, he knew the cause of his injury. *Id.*

Similarly, in *Clay v. Union Carbide*, 828 F.2d 1103 (5th Cir. 1987), the Fifth Circuit held that an awareness of "minor physical annoyances" connected to the work environment was sufficient to give plaintiff knowledge of his injuries and their causation, even if plaintiff did not discover the full extent of the damage caused by the work environment until many years later. *Id.* at 1107.

*Wilson v. Zapata Off-Shore*, 939 F.2d 260 (5th Cir. 1991), is also illustrative of the traumatic event/latent manifestation class of cases. There, the plaintiff claimed damages under the

Jones Act for emotional distress caused by sexual harassment. The Fifth Circuit held that she was time-barred from bringing her claims because she experienced stress, anxiety, and stomach pains when the alleged harassment occurred, even though she was not diagnosed with post-traumatic stress disorder until sometime later.  *Id.* at 268-69.

Here, Fleming experienced immediate pain that was sufficient to merit a visit to the rig medic when the injury occurred in 2000.  Having his knee pinched between an elevator and an air hoist muffler was a traumatic event, and the later manifestations of the injury do not alter the fact that Fleming suffered notable, immediate injuries from this traumatic occurrence. Consequently, the Court finds that the line of *Albertson* cases applies here and that Fleming's claim for the 2000 accident is time-barred.

Plaintiff's reliance on *Needy v. CSX Transportation*, 2000 WL 34349112 (W.D. Ky. 2000), does not change the Court's conclusion. In *Needy*, the Court found that the claim of a plaintiff who suffered from degenerative problems in his knees, but who had never suffered a traumatic event, did not prescribe as of 1998, despite his awareness, five years earlier, of mild arthritis in his knee.  *Id*.  The court found it dispositive that plaintiff "wasn't having any pain that he could connect to the performance

of his job." *Id.* at *3. Fleming's case is distinguishable because his 2000 injury occurred on the job, and the pain he suffered at the time of the injury was clearly job-related.

Plaintiff's suggestion that *Marathon Oil v. Lunsford*, 733 F.2d 1139 (5th Cir. 1984), should guide the Court's analysis also does not carry the day. In that case, the Fifth Circuit found that plaintiff's 1979 personal injury claim for an accident that occurred in 1976 was not prescribed under the one-year statute of limitations in the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 913(a). *Id.* at 1141-42. *Lunsford* is distinguishable because there the Fifth Circuit relied on language in the LHWCA that is not applicable here. Specifically, the court referred to the provision in the LHWCA that delays the start of the one-year statute of limitations until the employee becomes aware of "the relationship between the injury or death and the employment." 33 U.S.C. § 913(a); *Id.* at 1141. Based on this provision, the court concluded that unless an employee knew that the injury would *impair his capacity to work*, his knowledge was not sufficient to start the running of the statute of limitations. *Id*. Because the plaintiff in *Lunsford* continued to work for some time after the accident, he was allowed to bring his claim. Here, the relevant statute contains no language similar to the provision the court relied on

of his job." *Id.* at *3. Fleming's case is distinguishable because his 2000 injury occurred on the job, and the pain he suffered at the time of the injury was clearly job-related.

Plaintiff's suggestion that *Marathon Oil v. Lunsford*, 733 F.2d 1139 (5th Cir. 1984), should guide the Court's analysis also does not carry the day. In that case, the Fifth Circuit found that plaintiff's 1979 personal injury claim for an accident that occurred in 1976 was not prescribed under the one-year statute of limitations in the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 913(a). *Id.* at 1141-42. *Lunsford* is distinguishable because there the Fifth Circuit relied on language in the LHWCA that is not applicable here. Specifically, the court referred to the provision in the LHWCA that delays the start of the one-year statute of limitations until the employee becomes aware of "the relationship between the injury or death and the employment." 33 U.S.C. § 913(a); *Id.* at 1141. Based on this provision, the court concluded that unless an employee knew that the injury would *impair his capacity to work*, his knowledge was not sufficient to start the running of the statute of limitations. *Id*. Because the plaintiff in *Lunsford* continued to work for some time after the accident, he was allowed to bring his claim. Here, the relevant statute contains no language similar to the provision the court relied on

in *Lunsford*.

### III. CONCLUSION

For the foregoing reasons, the Court finds that plaintiff's claims regarding the 2000 injury are time-barred. Defendant's motion is hereby GRANTED.

New Orleans, Louisiana, this <u>9th</u> day of February, 2006.

*Sarah Vance*
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE